UNITED STATES of America

v.

Cary Michael COX and Kevin Randall Macicek.

Nos. 1:90–CR–65–6, 1:90–CR–65–7.

United States District Court, E.D. Texas, Beaumont Division.

April 1, 1991.

Debra A. Carr, Asst. U.S. Atty., Beaumont, Tex., for plaintiff.

Dick DeGuerin, DeGuerin & Dickson, Houston, Tex., for defendants.

## MEMORANDUM ORDER

COBB, District Judge.

The defendants, Cox and Macicek, have filed a motion to suppress approximately $484,000.00 of currency seized from them at the San Francisco International Airport on February 28, 1990. They argue the seizure was unlawful and violative of their Fourth Amendment rights. This court has reviewed the motion to suppress, the government's response, and the defendants' supplemental motion, and heard testimony from those involved in the search and subsequent seizure. The court finds the seizure was lawful; accordingly, the motion to suppress must be DENIED.

### THE FACTS

On February 28, 1990, David Robinson, a San Francisco Police Department officer assigned to the multi-agency San Francisco International Airport Drug Task Force (Airport Detail), received information from law enforcement officers in Los Angeles that two suspicious individuals would be arriving at San Francisco International early that afternoon from Dallas/Fort Worth (D/FW). He received descriptions for the individuals, learned they had paid cash for first-class one-way tickets to San Francisco, and were dressed in expensive clothing. Robinson notified other members of the Airport Detail. When the flight from D/FW arrived, Robinson and other agents in plain clothes observed the two individuals, later identified as Cox and Macicek, exit the plane. The agents observed Macicek exit first, walking slowly, and continually glancing behind him. Cox followed a few minutes later, walking quickly. He caught up to Macicek, spoke to him briefly, then walked several feet away from Macicek. Cox appeared to be attempting not to be seen as "traveling with Macicek."

Agents followed Cox and Macicek to baggage claim. Cox and Macicek claimed three suitcases, in addition to a briefcase Macicek was carrying. They exited the terminal building and went to a nearby island, referred to by the parties as a "taxicab stand." When Cox and Macicek reached the taxicab stand, Robinson and two other agents assigned to the Airport Detail, David Plunkett of the Drug Enforcement Agency (DEA) and Stephen Tse, also of DEA, approached Cox and Macicek. They identified themselves as narcotics officers, and asked to see Cox and Macicek's identification and airplane tickets.

Macicek opened his briefcase to remove his ticket, and Plunkett saw in the briefcase a pad of paper with names and amounts of money written on it. One of the agents (Tse) asked Cox for permission to open one of the bags which had been checked on the incoming flight. Cox gave permission and opened the bag by unlocking the combination lock. The agents observed a large paper bag "full of large bundles" of cash bound with rubber bands. Upon inquiry from the agents, Cox and Macicek said they were in San Francisco to buy gold, but that they knew nothing about the gold business except to "buy low and sell high." The agents asked Cox and Macicek to return with them to the agents' office, some 300 yards away. Cox and Macicek did so.

At the office, Cox and Macicek were further questioned. Macicek agreed to a search of his briefcase. Robinson and Plunkett began photocopying the pad with names and amounts of money written on it. At this point, Macicek became nervous. The agents asked for permission to search the suitcases, and Cox said no; he said he needed to speak to his father and a lawyer. The agents then ceased copying, returned the pad to the briefcase, and told Cox and Macicek they could leave but their luggage would be detained. The agents issued a receipt for the luggage, and Cox and Macicek left.

The agents then obtained the assistance of a drug detection dog, who alerted to the luggage, indicating the presence of contraband. Based on this information and their own observations, the agents sought a search warrant. The warrant was issued by a California state court, and the validity of the warrant was not challenged in this motion to suppress. Pursuant to the warrant, the luggage was searched, and in excess of $484,000.00 in currency was seized.

## THE LAW

Airport stops fall into one of three categories: mere communication between a citizen and an officer, brief detention or investigatory stops; and full scale arrests.

*United States v. Roser,* 724 F.Supp. 426 (E.D.La.1989), *citing United States v. Berry,* 670 F.2d 583 (5th Cir. Unit B 1982) (en banc). In the first category, the Fourth Amendment is not implicated. In the second category, the government must show a reasonable suspicion. In the third category, the government must show probable cause. In each case, the government's burden is by a preponderance of the evidence. *United States v. Hurtado,* 905 F.2d 74 (5th Cir.1990).

This court finds the instant case involves a brief detention. From start to finish, the encounter lasted approximately forty minutes. Cox and Macicek were free to leave, and did so when they became apprehensive. Accordingly, the burden on the government is that of reasonable suspicion.

■ The agents here had received information regarding these individuals from another law enforcement agency. Additionally, the agents here made independent observations of the suspected individuals. The behavior of Cox and Macicek in the airport, two individuals traveling together but attempting to seem otherwise, has been previously recognized as suspicious. *United States v. Galberth,* 846 F.2d 983 (5th Cir.1988). Finally, the agents observed a large amount of cash for which the defendants gave no credible explanation. It is apparent to this court Cox and Macicek were not dealing in gold.

■ These facts, taken together, more than adequately support the government's contention that the agents had a reasonable suspicion when they stopped Cox and Macicek. Although the defendants denied giving consent, this court finds from a preponderance of the evidence consent was given. Macicek, an intelligent, affluent, apparently well-educated young man, consented to the search of his briefcase, until he realized the agents were photocopying his pad. Upon his withdrawal of consent, they ceased copying. Similarly this court finds that by unlocking the combination lock of the suitcases, Cox manifested his consent to the search of the bag at the taxi stand. He later withdrew his consent to search the

remainder of the luggage, and the agents ceased the search and obtained a warrant.

Reviewing all the testimony, this court finds the agents had a reasonable suspicion of Cox and Macicek, they conducted the stop in the least intrusive manner possible, Macicek voluntarily consented to the search of his briefcase, and the agents did not exceed the scope of that consent.

The motion to suppress is DENIED.